IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

VALARIE K. JACKSON, INDIVIDUALLY,
AND AS ADMINISTRATRIX OF THE
ESTATE OF STEPHEN D. JACKSON,
DECEASED

    Plaintiff,

v.                                               No. 1:11-cv-01001-JDB-egb

UNITED STATES OF AMERICA,

    Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION

On January 3, 2011, the Plaintiff, Valarie K. Jackson, filed a wrongful death and loss of consortium action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), et seq. ("FTCA"). Jackson's claim arises from the alleged negligent driving of Marcus R. Beal, a private first class with the Tennessee Army National Guard. (Compl. ¶ 12, Docket Entry ("D.E.") 1.) Before the Court is the Defendant's motion to dismiss for lack of subject-matter jurisdiction in accordance with Rule 12(b)(1) of the Federal Rules of Civil Procedure. (D.E. 12.) The Government argues that Beal was not acting within the scope of his employment at the time of his alleged tortious conduct, and therefore, is not subject to suit under the FTCA. (D.E. 12.) For the reasons discussed herein, the Defendant's motion is GRANTED.

I.     FACTUAL BACKGROUND

On December 12, 2007, Beal received orders elevating him to "Active Duty for Special Work" status until September 30, 2008. (Compl. ¶ 9.) These orders placed Beal in a Federal Title 32 status with his pay and allowances provided by the federal government. (Id.) As part of Beal's obligations with the National Guard, he was required to report to training for one weekend per month at a predetermined training facility. (Beal Dep. Att. 1, 2, D.E. 40-1.) For the weekend beginning Friday, May 30, 2008, he was originally scheduled to report to Camp Shelby, Mississippi. (Id.) However, after his unit received an alert order notifying them of an impending deployment, Beal was alternatively ordered to attend training in Lavinia, Tennessee. (Beal Dep. 27.) The morning of May 30, 2008, Beal, by means of a privately owned vehicle, was traveling from his home in Huntingdon, Tennessee to Lavinia when he drove across the center line of the highway and into oncoming traffic. (Compl. ¶¶ 11-12.) He collided with a vehicle operated by Stephen D. Jackson causing both automobiles to overturn and come to rest off the highway. (Id. at ¶ 12.) Jackson was pronounced dead at the scene of the accident. (Id. at ¶ 13.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a case is properly dismissed when a Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold matter; there is no "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L. Ed. 2d 210 (1998).

A party may challenge subject-matter jurisdiction by engaging in either a facial or factual attack of the complaint. American Telecom Co. v. Republic of Lebanon, 501 F.3d 534, 537 (6th Cir. 2007). A facial attack is one that simply challenges the sufficiency of the complaint. Gentek Bldg. Products, Inc. v. Sherwin-Williams Claims. 491 F.3d 320, 330 (6th Cir. 2007) (citing Ohio

Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)). When considering facial attacks, this Court must accept the allegations made in the complaint as true. Gentek, 491 F.3d at 330. However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2006). Alternatively, when a party presents a factual attack,[1] the allegations contained in the complaint receive no presumption of truthfulness. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting Mortensen v. First Fed. Savings and Loan Ass'n, 549 F.2d 884, 890 (3d Cir. 1977)). When there is a disagreement over the facts, this Court must balance the conflicting evidence to determine whether subject-matter jurisdiction exists. RMI, 78 F.3d at 1134. In doing so, this Court has "wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat'l, 922 F.2d at 325. The burden of proof in establishing subject-matter jurisdiction rests upon the plaintiff. RMI Titanium, 78 F.3d at 1134.

III. Analysis

A. The FTCA

"The [Federal Tort Claims Act] provides a limited sovereign immunity waiver and subject matter jurisdiction for plaintiffs to pursue state law tort claims against the United States." Milligan v. United States, 670 F.3d 686, 692 (6th Cir. 2012). Among the actions covered by the FTCA are

> claims against the United States, for money damages, …for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act of omission occurred.

---

[1] A factual attack is where the factual basis for subject-matter jurisdiction is disputed.

28 U.S.C. § 1346(b)(1). Therefore, in order for the Plaintiff to recover under the FTCA, she must first establish that, (1) Beal was a federal employee at the time the tortious conduct was committed; and, that (2) he was acting within the scope of his employment at the time his alleged negligence occurred. There is no question that Beal was a federal employee within the meaning of the FTCA: he was in Title 32 active duty status at the time of the accident and his compensation was provided for by the federal government. However, there is substantial disagreement between the parties as to whether Beal was acting within the scope of his employment at the time of the alleged tortious conduct.

B. Scope of Employment

FTCA § 2671 provides that the phrase, "acting within the scope of his office or employment" should be interpreted as "acting in the line of duty" when applied to members of the military or naval forces. 28 U.S.C. § 2671. The "line of duty" determination at issue here is not synonymous with a line of duty determination made in connection with a servicemember's benefit claim. United States v. Taylor, 236 F.2d 649, 653-54 (6th Cir. 1956). Rather, whether a military member was acting within his "line of duty" for the purpose of an FTCA claim is determined by the substantive respondeat superior doctrine of the state where the accident occurred. Chancellor by Chancellor v. U.S., 1 F.3d 438, 440 (6th Cir. 1993) (citing Williams v. United States, 350 U.S. 857, 76 S. Ct. 100, 100 L. Ed. 761 (1955) (per curiam)). Therefore, this Court must adhere to Tennessee substantive law to determine whether Beal was acting within the scope of his employment at the time of the accident.

Under Tennessee law, a respondeat superior determination "requires the weighing and balancing of the facts and circumstances of each case." Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liability Ins. Co. 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). An employee is likely to be

4

working within the scope of his employment when the conduct at issue "is of the kind he is employed to perform;" "occurs substantially within the authorized time and space limits;" and "is actuated, at least in part, by a purpose to serve the master." Id. at 938 (citing Restatement (Second) of Agency § 228 (1957)). "The threshold issue in cases involving travel is whether the employment created the necessity for travel." Tenn. Farmers, 840 S.W.2d at 938. While Tennessee courts have not examined the precise issue of whether a military member traveling to and from a regularly scheduled training exercise is within the scope of the member's employment, it has supplied a general rule that an employee merely driving to and from work is not acting within the scope of his employment.[2] Sharp v. Northwestern Nat'l Ins. Co., 654 S.W.2d 391, 392 (Tenn. 1983). In Sharp, the Tennessee Supreme Court articulated the rationale behind this rule:

> [T]ravel to and from work is not, ordinarily, a risk of employment. Rather, driving to work falls into the group of all those things a worker must do in preparation for the work day, such as dressing; and driving home from work is often a prerequisite to getting home. While this travel is some modicum of benefit to the employer, travel to and from work is primarily for the benefit of the employee: if he doesn't present himself at the work place, he is not compensated for his labors.

Id. Over the years, courts have carved out a number of exceptions to this general "going and coming rule." These include situations where the employer makes "a deliberate and substantial payment for the expense of travel, or the provision of an automobile under the employee's

---

[2] This rule stems from a line of worker's compensation cases, and is therefore not controlling on this Court's analysis of the instant respondeat superior claim. However, the Court finds this rule helpful and chooses to utilize it as persuasive authority. The applicable test in workers compensation cases is whether an injury arises "out of and in the course of employment," Tenn. Code Ann. § 50-6-102(12)(A) (2012), while the standard applied in respondeat superior claims is whether the employee was "acting within the scope of his employment" when an alleged injury occurred, Tenn. Farmers, 840 S.W.2d at 937. This Court finds that these tests articulate substantially the same standard, noting that state courts often use the language from the two tests interchangeably. See, e.g., Guess v. Sharp Mfg. Co. of America, 114 S.W.3d 480, 484 (Tenn. 2003) (a worker's compensation case using the language "out of and in the *scope* of employment" to refer to the test applicable for worker's compensation analysis) (emphasis added). Additionally, it should be noted that this Court is not unique in applying rules originating from worker's compensation cases to respondeat superior determinations. See, e.g., Cronin v. Hertz Corp., 818 F.2d 1064, 1066 (2d Cir. 1987); Prince v. Creel, 358 F. Supp. 234, 238 (E.D.Tenn. 1972) (relying on worker's compensation cases to determine that "an employee on his way to and from his work to and from his home and not engaged in any duty connected with his employment is not acting within the scope of his employment.").

5

control," Pool v. Metric Constructors, Inc., 681 S.W.2d 543, 545 (Tenn. 1984), and where the employee is "performing some special act, assignment or mission at the direction of the employer." Stephens v. Maxima Corp., 774 S.W.2d 931, 934 (Tenn. 1989).

After reviewing the facts of this case, this Court finds that Beal's commute on the morning of the accident was tantamount to an employee driving to work. Therefore, by application of the "coming and going rule," Beal was not acting within the scope of his employment at the time of the accident. In reaching this decision, the Court examines Hamm v. United States, a case applying New York's "coming and going rule." 483 F.3d 135 (2d Cir. 2007). Hamm involved an FTCA claim over a car accident involving an Army reservist on his way to a training drill. Id. at 136. There, the court concluded that the reservist was not within the scope of his employment when he crashed into the plaintiff's car while driving from his home to the Army reserve center. Id. at 140. The court found that an employer lacks control over an employee driving to and from work, and therefore should not be liable for accidents that may occur during this type of travel. Id. at 138. In applying this rule to servicemembers, the court reasoned that "[t]here is no significant distinction between the level of control that the Army has over a reservist driving to a training exercise in the morning and the level of control that a private employer has over an employee driving to work." Id. The Plaintiff in Hamm argued that because the reservist was subject to military discipline under the Uniform Code of Military Justice ("UCMJ"), the Army controlled the reservist's commute. Id. The court found this argument unpersuasive, holding that the scope of the FTCA would be improperly and drastically expanded if the Government were to be held liable for all servicemember conduct punishable under the UCMJ. Id. at 139. Ultimately, because the Government did not dictate the route of travel the

reservist was to take and did not otherwise control his actions, the court held that the reservist was not acting within the scope of his employment the morning of the accident. Id. at 138.

In the instant case, Ms. Jackson asserts that the Army was sufficiently in control of Beal's actions to assume liability. Plaintiff notes that Beal was given a specific time to arrive, was told what to wear, what to bring with him, and was required to meet strict personal appearance standards. Furthermore, because Beal would have been subject to military discipline had he failed to arrive on time or meet exacting personal grooming standards, the Government was in control over his actions. These arguments are unconvincing; the Plaintiff fails to show how the requirements imposed on Beal were any different than those a regular employer would demand upon its employees. The military is not unique in requiring its employees to arrive for work at a particular time and to adhere to specific uniform and grooming requirements. Additionally, as asserted in Hamm, the fact that Beal was subject to punishment under the UCMJ did not alter the disposition of this case. See 483 F.3d at 139.

The Plaintiff further argues that because Beal was on orders 24 hours a day, 7 days a week, he was at work at the time of the accident. Tennessee courts have also addressed this issue, holding that an on-call employee is not acting within the course of employment when traveling to and from work. See Sharp, 654 S.W.2d at 391-92 (finding that a "roving sergeant," subject to being called to work at any time, was not acting within the course of his employment while traveling home from work). Therefore, the fact that Beal was subject to being called into work does not affect the analysis of this case.

Ultimately, this Court fails to find any facts indicating that it should treat this case differently than one involving a civilian employee and employer. The circumstances surrounding Beal's drive to work are substantially the same as any regular employee commuting to and from

his or her job. Beal was not told to take any specific route, he was not required to perform any tasks for his National Guard unit while traveling, and by his travel, was not conveying any benefit to the Government other than to deliver himself to Camp Lavinia. Additionally, none of the facts presented suggest that any of Tennessee's "going and coming rule" exceptions apply in this case.[3] Therefore, the Court holds that Beal was not acting within the scope of his employment at the time of the accident, and, thus, Plaintiff's claim under the FTCA must fail.

IV. CONCLUSION

For the reasons discussed herein, this Court lacks subject-matter jurisdiction under the FTCA and Defendant's motion to dismiss is GRANTED.

IT IS SO ORDERED this 25th day of September, 2012.

                                                   s/ J. DANIEL BREEN

                                                   UNITED STATES DISTRICT JUDGE

---

[3] Beal was not compensated for his commute to Camp Lavinia, Pool, 681 S.W.2d at 545, he was not engaged in a special assignment for the Government, Stephens, 774 S.W.2d at 934, and traveling was not an integral part of his job. Smith v. Royal Globe Ins. Co. 551 S.W.2d 679, 681 (Tenn. 1977). There is no evidence that Beal was paid for his travel on the day of the accident. When asked whether he was reimbursed, Beal could only respond, "I can't remember for sure. I don't know." (Beal Dep. 62.)